RALPH J. MAHER *vs.* RETIREMENT BOARD OF QUINCY
& others.[1]

Norfolk. September 4, 2008. - November 6, 2008.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Municipal Corporations,* Retirement board, Pensions. *Public Employment,* Forfeiture of pension, Retirement benefits. *Pension. Practice, Civil,* Report. *Constitutional Law,* Excessive fines clause.

This court exercised its power of general superintendence, G. L. c. 211, § 3, to decide an issue of Federal constitutional law presented in an appeal that a District Court judge purported to report to the Appeals Court, rather than to the Appellate Division of the District Court, where requiring the parties at this stage to exhaust the proper procedural route to obtain review — the filing of a new certiorari action in the Superior Court — would not serve the interests of judicial economy. [520-522]

A District Court judge properly determined that the plaintiff, who, while employed as the chief plumbing and gas inspector of a city, was convicted of certain crimes resulting from a break-in that he had committed at city hall, did not meet his burden of establishing that the forfeiture of his pension amounted to an excessive fine in violation of the Eighth Amendment to the United States, where, comparing the total amount of the forfeiture to the gravity of the underlying offenses to which he pleaded guilty, which offenses could have undermined public confidence in the selection and appointment of officials to supervisory positions, the forfeiture was not grossly disproportional. [522-525]

CIVIL ACTION commenced in the Superior Court Department on August 27, 2004.

After review by the Appeals Court, 67 Mass. App. Ct. 612 (2006), further proceedings were had before *Mark S. Coven,* J., in the Qunicy Division of the District Court Department, and questions of law were reported by him to the Appeals Court.

The Supreme. Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frank J. McGee* for the plaintiff.

*Michael Sacco* for the defendant.

[1]Justices of the Quincy Division of the District Court Department of the Trial Court, as nominal parties.

*Martha Coakley*, Attorney General, *& Neil P. Olson*, Assistant Attorney General, for the Attorney General & another, amici curiae, submitted a brief.

IRELAND, J. We transferred this case from the Appeals Court on our own motion to consider whether a decision of the retirement board of Quincy (board) that the plaintiff's entitlement to a retirement allowance (pension) had been forfeited pursuant to G. L. c. 32, § 15 (4), amounted to an excessive fine in violation of the Eighth Amendment to the United States Constitution. Because we conclude that the amount of the plaintiff's pension forfeiture is not excessive, we affirm so much of the District Court judge's ruling as determined that the plaintiff did not meet his burden of establishing that the forfeiture violated his Eighth Amendment rights.

1. *Background and procedure.* We recite the background and lengthy procedural history of this case insofar as relevant here, reserving certain details for our discussion of the issue raised.

The plaintiff, Ralph J. Maher, was employed by the city of Quincy (city) as the chief plumbing and gas inspector. In December, 2001, Maher and another city employee broke into and entered the personnel office at city hall. During the break-in, Maher examined his personnel file and stole a portion of it. He sought to remove documents criticizing his job performance, intending that the absence of such documents might improve his chances for reappointment to his position by the mayor-elect of the city. In January, 2002, he retired from his position for superannuation.

In March, 2002, a grand jury returned three indictments against Maher related to the December, 2001, break-in, to which Maher pleaded guilty in July, 2003: breaking and entering in the daytime with intent to commit a felony, in violation of G. L. c. 266, § 18; stealing in a building, in violation of G. L. c. 266, § 20; and wanton destruction of property, in violation of G. L. c. 266, § 127.[2] Maher was sentenced to six months of unsupervised probation on each conviction, to run concurrently, and was ordered to make restitution of $393 and to pay a fine of $500.

---

[2] Maher pleaded guilty only to so much of the indictment alleging wilful and malicious destruction of property in excess of $250 as charged wanton destruction of property.

The board instituted proceedings against Maher in August, 2003, and notified him that it would hold a hearing to determine whether his convictions required forfeiture of his rights to his retirement allowance pursuant to G. L. c. 32, § 15 (4). In December, 2003, after the hearing, the board issued a written decision determining that Maher's convictions involved violation of the laws applicable to his office or position, and therefore, pursuant to G. L. c. 32, § 15 (4), he had forfeited his retirement allowance.

Maher then commenced this action with the filing of a petition in the District Court, seeking review of the board's decision.[3] The details of those proceedings are not relevant to our discussion here. The District Court judge affirmed the board's decision, granting its motion for judgment on the pleadings and dismissing Maher's petition. Maher then sought review of the judgment of the District Court by filing an action in the nature of certiorari in the Superior Court, pursuant to G. L. c. 249, § 4.[4] A Superior Court judge allowed the board's motion for judgment on the pleadings. Maher appealed.

On appeal, the Appeals Court held, among other things, that the Superior Court judge erred in ruling that, because Maher had not raised before the board the claim that the forfeiture provision of G. L. c. 32, § 15 (4), as applied to him, constituted an "excessive fine" prohibited by the Eighth Amendment, he had waived that claim.[5] *Maher* v. *Justices of the Quincy Div. of the Dist. Court Dep't*, 67 Mass. App. Ct. 612, 621 (2006). Citing

---

[3]General Laws c. 32, § 16 (3) (*a*) (2), provides, in pertinent part:

"[A]ny member who is aggrieved by any action taken or decision of a board . . . rendered with reference to his dereliction of duty as set forth in section fifteen, may, within thirty days after the certification of the decision of the board, bring a petition in the district court . . . praying that such action and decision be reviewed by the court. After such notice as the court deems necessary, it shall review such action and decision, hear any and all evidence and determine whether such action was justified. If the court finds that such action was justified the decision of the board . . . shall be affirmed; otherwise it shall be reversed and of no effect. . . . The decision of the court shall be final."

[4]Pursuant to G. L. c. 249, § 4, Maher added to his action in the Superior Court the Justices of the Quincy Division of the District Court Department as nominal defendants. See note 1, *supra.*

[5]The Appeals Court also concluded that the board properly determined that

our decision in *MacLean* v. *State Bd. of Retirement*, 432 Mass. 339 (2000), the Appeals Court concluded that consideration of Maher's Eighth Amendment claim would require additional fact finding, in order to determine whether Maher's pension forfeiture was grossly disproportional to the gravity of the crimes of which he had been convicted. *Maher* v. *Justices of the Quincy Div. of the Dist. Court Dep't, supra* at 620. The Appeals Court vacated the judgment of the Superior Court and remanded the case to the District Court for consideration of Maher's Eighth Amendment claim. *Id.* at 621.[6]

On remand, the District Court judge issued a written decision in which he made additional findings and concluded that the forfeiture did not violate Maher's Eighth Amendment rights. The District Court judge did not direct the entry of judgment following his decision; instead, the judge purported to report two questions of law to the Appeals Court.[7] We transferred the case from the Appeals Court on our own motion.[8]

2. *Discussion.* a. *Propriety of report.* As a threshold matter, we consider an issue not addressed by either party: the propriety of the report on which this case comes before us. No statute or rule authorizes a District Court judge, in a civil action, to report a case or a ruling to the Appeals Court. The judge improperly reported his decision in this case to the Appeals Court; it would have been proper for the judge to report his decision to the Appellate Division of the District Court. See G. L. c. 231, § 108

---

Maher's convictions involved violation of the laws applicable to his position, G. L. c. 32, § 15 (4), and that a board member did not err in refusing to recuse himself from the board proceedings. *Maher* v. *Justices of the Quincy Div. of the Dist. Court Dep't,* 67 Mass. App. Ct. 612, 621 (2006).

[6]We denied Maher's application for further appellate review. *Maher* v. *Justices of the Quincy Div. of the Dist. Court Dep't,* 448 Mass. 1105 (2007).

[7]The District Court judge purported to report the following questions:

"1. Does a forfeiture of a pension, pursuant to G. L. c. 32, § 15 (4), implicate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution?

"2. If the Excessive Fines Clause is implicated, on the facts of this case, has Maher failed to meet his burden of demonstrating the forfeiture of his pension constitutes an Excessive Fine?"

[8]We acknowledge the amicus brief filed by the Attorney General and the State Board of Retirement.

(providing that District Court judge may report case, after decision, to Appellate Division). See also Mass. R. Civ. P. 64 (b), as appearing in 423 Mass. 1410 (1996) (report by District Court judge of case or ruling to Appellate Division governed by Rule 5 of Dist./Mun. Cts. Rules for Appellate Division Appeal [2008]). Cf. Mass. R. Civ. P. 64 (a), as appearing in 423 Mass. 1410 (1996) (authorizing trial court judge *other* than District Court judge to report case to Appeals Court after verdict or findings of fact, or to report case without decision where parties agree to all material facts and request report of case, or to report propriety of interlocutory finding or ruling).

Where a report is not properly before us, we ordinarily discharge it and decline to decide the case. See, e.g., *Heck* v. *Commonwealth*, 397 Mass. 336, 338-339 (1986). Because of the particular circumstances of this case, however, we exercise our power of general superintendence, G. L. c. 211, § 3, and decide the issue presented.

Here, the Appeals Court vacated the judgment of the Superior Court in Maher's certiorari action, and remanded this case to the District Court for further consideration of the Eighth Amendment claim. General Laws c. 32, § 16 (3) (*a*) (2), expressly provides that "the decision of the [District] [C]ourt [in reviewing the board's decision] shall be final." See note 3, *supra.* "[C]ertiorari is the only way of reviewing decisions declared final by statute." *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 134 (1997), quoting *MacKenzie* v. *School Comm. of Ipswich*, 342 Mass. 612, 614 (1961). See *State Bd. of Retirement* v. *Bulger*, 446 Mass. 169, 173 (2006) (G. L. c. 249, § 4, provides limited judicial review in nature of certiorari to correct errors of law in administrative proceedings where judicial review otherwise unavailable).

Were we to discharge, as improper, the report in this case, the procedural avenue for the parties to obtain further review following the entry of judgment in the District Court would be the filing of a new certiorari action in the Superior Court. An appeal from a subsequent judgment of the Superior Court would then present an appellate court with the same question to be decided here. Maher's Eighth Amendment claim is the only issue in this case that remains subject to appeal. Requiring the parties at this

stage to exhaust the proper procedural route to obtain review of this case would not serve the interests of judicial economy.[9]

b. *Excessiveness of fine.* Maher argues that the District Court judge erred in concluding that he had not met his burden of proving that the forfeiture violated the Eighth Amendment. The Eighth Amendment, applicable to the States through the due process clause of the Fourteenth Amendment to the United States Constitution, *Cooper Indus., Inc.* v. *Leatherman Tool Group, Inc.*, 532 U.S. 424, 433-434 (2001), citing *Furman* v. *Georgia*, 408 U.S. 238 (1972), provides: "Excessive bail shall not be required, nor excessive fines imposed, or cruel and unusual punishments inflicted." The excessive fines clause of the Eighth Amendment "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.' " *United States* v. *Bajakajian*, 524 U.S. 321, 328 (1998), quoting *Austin* v. *United States*, 509 U.S. 602, 609-610 (1993). "Forfeitures — payments in kind — are thus 'fines' if they constitute punishment for an offense." *United States* v. *Bajakajian, supra.* "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *Id.* at 334. A court reviewing the proportionality of a forfeiture therefore compares the amount of the forfeiture to the gravity of the underlying offense that triggered it. *Id.* at 336-337. "If the amount of the forfeiture is grossly disproportional to the gravity of the [triggering] offense, it is unconstitutional." *Id.* at 337.

For purposes of this appeal, we assume, without deciding, that (as Maher argues) the District Court judge correctly ruled that the excessive fines clause applies to the pension forfeiture provision of G. L. c. 32, § 15 (4). See *MacLean* v. *State Bd. of*

---

[9]The judge's report, although referring to his decision, nonetheless takes the form of two questions of law. "Although a judge may report specific questions of law in connection with an interlocutory finding or order, the basic issue to be reported is the correctness of [the] finding or order. Reported questions need not be answered in this circumstance except to the extent that it is necessary to do so in resolving the basic issue." *McStowe* v. *Bornstein*, 377 Mass. 804, 805 n.2 (1979). We therefore disregard the questions posed by the judge and evaluate the propriety of the ruling. *Barnes* v. *Metropolitan Hous. Assistance Program*, 425 Mass. 79, 84 (1997).

*Retirement,* 432 Mass. 339, 346 (2000) (assuming, without deciding, pension forfeiture required by G. L. c. 32, § 15 [4], amounts to punishment and therefore constitutes "fine"). Therefore, we turn to Maher's argument that the District Court judge erred in concluding that Maher had not met his burden of establishing that the forfeiture of his pension was excessive. The judge found that the total amount that Maher forfeited would be approximately $576,000.[10] A party challenging the constitutionality of a forfeiture as being excessive bears the burden of demonstrating excessiveness. *Id.* at 347, citing *United States* v. *Ahmad,* 213 F.3d 805, 816 (4th Cir. 2000). We review the proportionality determination made by the District Court judge de novo, see *United States* v. *Bajakajian, supra* at 336, and, as mentioned, we determine whether the forfeiture was excessive by drawing the constitutionally required comparison between the magnitude of the forfeiture required by the statute and the gravity of the triggering offenses. See *United States* v. *Bajakajian, supra* at 336-337.

In evaluating the gravity of the underlying offenses that triggered the forfeiture of Maher's pension pursuant to G. L. c. 32, § 15 (4), we gauge the degree of Maher's culpability and consider the harm caused by the underlying offenses. *Id.* at 338-340. To gauge the degree of Maher's culpability, we look to, among other things, the nature and circumstances of his offenses, e.g., whether there was a relationship between the crimes that triggered the forfeiture and any other illegal activities, as well as to the maximum penalties authorized by the Legislature as punishment for his offenses. See *id.* at 337-339. See also *MacLean* v. *State Bd. of Retirement, supra* at 346.

By any measure, the crimes to which Maher pleaded guilty are serious in nature.[11] "The offense of breaking and entering in the daytime [in violation of G. L. c. 266, § 18,] falls within the

---

[10]Maher conceded the accuracy of this amount at oral argument.

[11]Maher argues that our analysis should take into account the lack of a nexus between the crimes to which he pleaded guilty and his entitlement to receive a pension. This contention is unavailing. The District Court judge found that Maher intended through his unlawful acts to secure continued employment by means of fraud, i.e., depriving the incoming mayor of information appearing within Maher's personnel record that would have tended to show that Maher was not a suitable candidate for reappointment to his position. If Maher had succeeded, he would have gained fraudulently obtained income and increased

definition of a felony." *Commonwealth* v. *Soares*, 51 Mass. App. Ct. 273, 277 n.5 (2001), citing *Commonwealth* v. *Sheeran*, 370 Mass. 82, 88 (1976). "[L]arceny in a building [in violation of G. L. c. 266, § 20,] is a felony regardless of the value of the items stolen." *Commonwealth* v. *Cruz*, 430 Mass. 182, 188 (1999), citing *Commonwealth* v. *Ronchetti*, 333 Mass. 78, 82 (1955).

In addition, the Legislature has authorized the following maximum penalties as punishment for the crimes to which Maher pleaded guilty: (1) breaking and entering into a building in the daytime with intent to commit a felony, in violation of G. L. c. 266, § 18, is punishable by a maximum sentence of up to ten years in State prison; (2) stealing in a building, in violation of G. L. c. 266, § 20, is punishable by imprisonment in the State prison for up to five years; and (3) wanton destruction of property (the door of the personnel director's office), in violation of G. L. c. 266, § 127, is punishable by imprisonment for up to two and one-half years. These punishments indicate the gravity and seriousness with which the Legislature views these crimes.[12] See *MacLean* v. *State Bd. of Retirement*, *supra* at 348. See also *United States* v. *Bajakajian*, *supra* at 336 (determination of appropriate punishment for offense belongs to Legislature in first instance, and any judicial determination of gravity of criminal offense is inherently imprecise).

Maher argues that the harm he caused was minimal, where he acquired no financial gain from his actions, and where (as he argues) the only pecuniary loss to the city was the cost of repairing the office door damaged during the break-in. We disagree. It is immaterial that Maher did not achieve the goal of his criminal

pension benefits. To the extent that Maher's argument goes to the question whether his convictions involved violation of laws applicable to his position, that question is not before us. That determination was made by the board in the first instance, upheld by the District Court and the Superior Court, and affirmed by the Appeals Court. *Maher* v. *Justices of the Quincy Div. of the Dist. Court Dep't*, 67 Mass. App. Ct. 612, 621 (2006), *S.C.*, 448 Mass. 1105 (2007) (further appellate review denied).

[12]Maher contends that we should consider the relative leniency of the sentence he received in our assessment of his degree of culpability. The sentence imposed as punishment for conviction of a particular offense, however, does not control our analysis; rather, the maximum punishment authorized by the Legislature is the determinative factor. See *MacLean* v. *State Bd. of Retirement*, *supra* at 348.

enterprise, which was fraudulently to secure continued employment through reappointment to his position. The District Court judge found that had Maher succeeded in obtaining reappointment, he stood to gain approximately $125,000 in salary during the two-year term of the incoming mayor. Furthermore, we view the potential harm to the public trust caused by Maher's actions as equally important to our analysis as any potential harm his actions might have caused to the public fisc. The District Court judge concluded that Maher's crimes could have undermined public confidence in the selection and appointment of officials to supervisory positions. We agree.

Comparing the total amount of the forfeiture of Maher's pension, approximately $576,000, to the gravity of the underlying offenses to which he pleaded guilty, we cannot say that the forfeiture is grossly disproportional. See *MacLean* v. *State Bd. of Retirement, supra* at 350 (forfeiture of pension totaling approximately $625,000 not excessive where former State employee pleaded guilty to two misdemeanor violations of G. L. c. 268A, § 7, the conflict of interest statute). There was no error.

3. *Conclusion.* For the reasons stated above, we affirm so much of the District Court judge's ruling as determined that the plaintiff did not meet his burden of establishing that the forfeiture violates his Eighth Amendment rights. The case is remanded to the District Court where judgment shall enter for the defendants.

*So ordered.*