Macdonald, D. Lloyd, J.
The plaintiff John P. Bulger (“Plaintiff’ or “Bulger”) has brought an appeal pursuant to G.L.c. 249, §4 for certiorari review of a decision of the West Roxbuiy District Court (the “District Court”) upholding the determination of the defendant *360 State Board of Retirement (the “Retirement Board” or the “Board”) that Bulger’s pension be forfeited pursuant to G.L.c. 32, §15(4). The Court AFFIRMS the District Court and thus DENIES the Plaintiffs motion and ALLOWS the Retirement Board’s cross motion for the reasons that follow.
Facts and Prior Proceedings
The Plaintiff was employed by the Commonwealth for thirty-two years. In 2001 he retired from his position as clerk-magistrate of the Boston Juvenile Court. At that time he began receiving a monthly pension allowance, as provided under G.L.c. 32, §5. Although the estimates of the value of the pension are in dispute, there is agreement that the range is between $700-$860,000. (The difference in the valuations is not material to the Court’s decision here.)
Approximately two years after Bulger retired, in April 2003 he pleaded guilty in the United States District Court for the District of Massachusetts to two counts of perjury and two counts of obstruction of justice. The charges arose from false testimony given by Bulger before the U.S. grand jury that was investigating, inter alia, the assets and whereabouts of the Defendant’s brother, James (“Whitey”) Bulger. James Bulger was — and continues to be — on the run from a federal racketeering indictment. The Defendant testified falsely by his denial that he had been in communication with his brother, James, and by his denial of knowledge as to a safe deposit box owned by his brother. For the perjury and obstruction charges the federal court sentenced Bulger to six months home confinement, 3 years supervised release and a $3,000 fine. The maximum potential sentence for the crimes to which Bulger pleaded guilty was 30 years in prison, 12 years of supervised release and a $1 million fine.
Following Bulger’s conviction and sentencing, the Retirement Board voted to rescind Bulger’s pension pursuant to G.L.c. 32, §15(4), which provides for forfeiture upon “conviction of a criminal offense involving violation of the laws applicable to his office or position.” Bulger appealed the Board’s decision to the District Court on two grounds: First, he asserted that the crimes to which he pleaded did not “involv[e] violation of the laws applicable to his office or position” and, second, Bulger submitted that the rescission of his pension under the circumstances was contrary to the 8th Amendment of the U.S. Constitution’s proscription of “excessive fines.”
Without addressing Bulger’s constitutional argument, the District Court reversed the Board’s decision, determining that the offenses to which Bulger pleaded guilty were not applicable to his former position as clerk-magistrate. The Retirement Board then sought certiorari review in the SJC on the latter issue. The SJC reversed the District Court. In doing so, the SJC stated:
At the heart of a clerk-magistrate’s role is the unwavering obligation to tell the truth, to ensure that others do the same through the giving of oaths to complainants, and to promote the administration of justice. When Bulger committed the crimes of perjury and obstruction of justice, he violated the fundamental tenets of the [clerk-magistrate’s] code [of conduct] and of his oath of office, notwithstanding his contention that such misconduct occurred in the context of what was arguably a personal matter . .. The nature of Bulger’s particular crimes cannot be separated from the nature of his particular office when what is at stake is the integrity of our judicial system.
State Board of Retirement v. Bulger, 446 Mass. 169, 179-80 (2006).
On the SJC’s remand of his case to the District Court, Bulger sought review by the District Court of his earlier advanced 8th Amendment constitutional claim which had not been addressed. The District Court held (and on reconsideration affirmed) that the pension forfeiture did not violate the 8th Amendment. Bulger then sought certiorari review in this Court.
Scope of Review
An action for certiorari is only available “to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal.” G.L.c. 249, §4.
On certiorari review “[a] court will correct only a substantial error of law, evidenced by the record, which adversely affects a material right of the plaintiff ... In its review, the court may rectify only those errors of law which have resulted in manifest injustice to the plaintiff or which have adversely affected the real interests of the general public.” Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 790-91 (2000), quoting Carney v. Springfield, 403 Mass. 604, 605 (1988). “The court’s power on certiorari is not exercised to remedy mere technical errors that have not resulted in manifest injustice.” Mass. Prisoners Assn. Political Action Comm v. Acting Governor, 435 Mass. 811, 824 (2002).
Therefore, the question before this Court is whether, on the basis of the record, the District Court substantially erred in a way that materially affected the rights of the Plaintiff or the public interest.
Discussion
The point of departure for the Court is that it is the Plaintiff who “has the burden of proving that a forfeiture violates the Eighth Amendment.” McLean v. State Board of Retirement, 432 Mass. 339, 347 (2000).
The “excessive fine” clause “requires us to consider first, whether there was an extraction of payments, second, whether any extraction was punitive, and third, whether any punitive extraction was excessive.” Id. at 346. However, as the SJC itself did in McLean, id., and more recently in Maher v. Retirement Board of Quincy, 452 Mass. 517, 522 (2008), this Court as *361 sumes, without deciding, that the excessive fine clause applies to the pension forfeiture provision of G.L.c. 32, §15(4). Thus, for these purposes, the Court accepts that the Board’s action to rescind Bulger’s pension was an “extraction” and that it was “punitive.”[1] The remaining question before the Court, therefore, is whether the Board’s rescission of Bulger’s pension was constitutionally “excessive.”
Within the last year, the SJC has provided the following guidance on the issue of excessiveness:
“The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.” A court reviewing the proportionality of a forfeiture therefore compares the amount of the forfeiture to the gravity of the underlying offense that triggered it. “If the amount of the forfeiture is grossly disproportional to the gravity of the [triggering] offense, it is unconstitutional.”
Maher, 452 Mass. at 522, quoting United States v. Bajakajian, 524 U.S. 321, 334 and 336-37 (1993).
In McLean the SJC found that the forfeiture of a pension of over $700,000 and a disgorgement of $512,000 in connection with a misdemeanor offense for which the defendant was placed on probation and fined $6,000 was not disproportionate. 432 Mass. at 347. And in Maher the SJC held that a forfeiture of $576,000 was not excessive after the defendant, who had been the chief plumbing and gas inspector for the City of Quincy, pleaded guilty to breaking into City Hall and was sentenced to six months of unsupervised probation, $393 of restitution and a fine of $500. 452 Mass. at 525. In language directly pertinent to Bulger’s situation because Bulger made a similar argument,[2] the SJC stated:
Maher argues that the harm he caused was minimal, where he acquired no financial gain from his actions, and where (as he argues) the only pecuniary loss to the city was the cost of repairing the office door damaged during the break-in. We disagree. It is immaterial that Maher did not achieve the goal of his criminal enterprise ... Furthermore, we view the potential harm to the public trust caused by Maher’s actions as equally important to our analysis as any potential harm his actions might have caused to the public fisc.
Id. at 524-25.
With these SJC precedents in mind and where at an earlier stage of this very case the SJC concluded that Bulger had “violated the fundamental tenets of the [clerk-magistrate’s] code and of his oath of office” and that “what is at stake [by Bulger’s crimes] is the integrity of our judicial system,” 446 Mass. at 179-80, there is no reasonable basis to conclude that the forfeiture of Bulger’s pension was “grossly disproportional” to the harm caused by his conduct. Accordingly, Bulger has failed to meet his burden of proof that the “fine” imposed was excessive under the 8th Amendment.
ORDER
The Plaintiffs motion for judgment on the pleadings is DENIED. The defendant’s cross motion is ALLOWED. The decision of the District Court is AFFIRMED and judgment shall enter for the defendant.

On behalf of the Retirement Board, the Attorney General contested the assumption that the Court is making. The AG argued that the forfeiture of a pension is not an “extraction” of a payment because by its nature it is at most an expectation of a stream of future payments. For support, the AG cited Hopkins v. Oklahoma Public Employees Retirement System, 150 F.3d 1155, 1158 n.l (10th Cir. 1998). Further, the AG submitted that forfeiture is not “punitive" but rather remedial in nature and simply a “collateral consequence” of a conviction, citing McLean, 432 Mass. at 343 n.6. In addition, the AG claimed that Bulger was judicially estopped from making his claim at all because at his federal sentencing, Bulger’s counsel successfully obtained leniency from the court on the basis of counsel having argued the financial hardship that Bulger was already facing due to the (then) temporary rescission of his pension and the prospect of the rescission becoming permanent. In support, the AG cited East Cambridge Sou. Bank v. Wheeler, 422 Mass. 621, 623 (1996). The Court finds that each of these arguments, especially that of judicial estoppel, is plausible, but the Court chooses to dispose of the case on the assumption that the only issue before it is that of the proportionality of the “fine.”

In his memorandum in support of his appeal, Bulger submitted that the gravaman of his offense was substantially mitigated by the circumstance that his crimes were exclusively “motivated by family loyalty to protect his brother.”